# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| **H-D U.S.A., LLC and HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC**, | Case No. 17-cv-1776 |
| Plaintiffs, | |
| vs. | |
| **AFFLICTION HOLDINGS, LLC,** | **COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND UNFAIR COMPETITION** |
| Defendant. | **JURY TRIAL REQUESTED** |

## COMPLAINT

Plaintiffs H-D U.S.A., LLC and Harley-Davidson Motor Company Group, LLC (Plaintiffs and their predecessors in interest, together with their parents, subsidiaries, and affiliated companies are collectively referred to as "H-D"), by their undersigned attorneys, bring this action against Affliction Holdings, LLC ("Affliction" or "Defendant") and allege as follows, upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters:

### NATURE OF THE ACTION

1.      This is a civil action for trademark counterfeiting, trademark infringement, trademark dilution, and unfair competition arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, Wisconsin state law, and common law.  H-D seeks equitable and monetary relief for Affliction's actions that constitute willful violations of H-D's trademark rights in its famous and

federally registered Bar & Shield logo trademarks shown below (collectively, the "Bar & Shield Logo").



2.       Affliction markets, promotes, advertises, and sells shirts, hats, and jackets that bear variations of H-D's Bar & Shield Logo (the "Infringing Marks") on its website at www.afflictionclothing.com, in retail stores, and on third-party websites (the "Infringing Products"). Depicted below is H-D's Bar & Shield Logo surrounded by examples of the Infringing Marks.









3.    Affliction's use of the Infringing Marks on the Infringing Products falsely suggests and is likely to create the mistaken impression that Affliction's products and commercial activities come from H-D, are sponsored or approved by H-D, or are otherwise affiliated with H-D, when they are not.

4.    Despite the fame of the Bar & Shield Logo and despite being placed on express notice of H-D's trademark rights and H-D's objections to Affliction's actions that are the subject of this Complaint, Affliction continues to market, promote, advertise, and sell Infringing Products.

5.    Affliction's unlawful activities described below infringe H-D's Bar & Shield Logo; are likely to dilute and tarnish the famous Bar & Shield Logo; constitute trademark counterfeiting of the Bar & Shield Logo registered marks that cover shirts, hats, and/or jackets; constitute unfair competition; and have caused and will continue to cause, unless enjoined, irreparable harm to H-D, H-D's Bar & Shield Logo, and the consuming public.

3

6.     H-D seeks injunctive and other relief from Affliction's unauthorized use of the Infringing Marks, including without limitation an injunction enjoining Affliction from engaging in its unlawful activities, statutory damages for counterfeiting, Affliction's profits, H-D's actual damages, and H-D's attorneys' fees and costs.

## THE PARTIES

7.     Plaintiff H-D U.S.A., LLC is a Wisconsin limited liability company having a principal place of business at 3700 West Juneau Avenue, Milwaukee, Wisconsin 53208, and is the owner of the trademarks asserted in this action, i.e. the Bar & Shield Logo.

8.     Plaintiff Harley-Davidson Motor Company Group, LLC d/b/a Harley-Davidson Motor Company is a Wisconsin limited liability company having its principal place of business at 3700 W. Juneau Avenue, Milwaukee, Wisconsin 53208, and is a licensee of the Bar & Shield Logo.

9.     Defendant Affliction Holdings, LLC is a limited liability company organized under the laws of the State of California, with its principal place of business at 1799 Apollo Ct., Seal Beach, California 90740.  Affliction is not an authorized H-D dealer and is not an authorized licensee of H-D's Bar & Shield Logo.

## JURISDICTION AND VENUE

10.     This action arises under the federal Trademark Act, 15 U.S.C. §§ 1051, *et seq.,* Wisconsin state law, and common law.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338(a) and (b).  Because the parties are citizens of different states and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, this Court also has

4

jurisdiction under 28 U.S.C. § 1332. Jurisdiction over the state law claims is also appropriate under 28 U.S.C. § 1367(a) and principles of pendent jurisdiction because those claims are substantially related to the federal claims.

12.     This Court has personal jurisdiction over Affliction given, among other things, Affliction's targeting of retailers and sales of Infringing Products in this District, and venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c). Venue is also proper because Affliction is subject to personal jurisdiction in this District.

## H-D, ITS PRODUCTS AND SERVICES, AND ITS TRADEMARKS

13.     H-D is a world-famous manufacturer of motorcycles and a wide variety of other products and services, including shirts, hats, and jackets. H-D is the largest U.S. manufacturer of motorcycles.

14.     Founded in 1903, H-D has manufactured, promoted, and sold motorcycles and related products for over 110 years.

15.     H-D owns the exclusive right to use the Bar & Shield Logo for motorcycle products and services and numerous other products, including shirts, hats, and jackets.

16.     Since at least as early as 1910, H-D has used the distinctive Bar & Shield Logo in the U.S. in connection with motorcycles and related products and services. H-D's rights in the Bar & Shield Logo extend to the mark's design (i.e., the bar and shield design), regardless of the wording contained within that design.

17.     Since at least 1915, H-D has used the Bar & Shield Logo in connection with apparel, including shirts, hats, and jackets.

18.     Over the years, H-D has expanded its business to include a wide range of other products and services, including but not limited to accessories, jewelry, bags, collectibles, and

more. H-D has extensively promoted the Bar & Shield Logo across H-D's extensive line of products and services over the years.

19.    Apparel is a significant part of H-D's business and has been so for many years. For decades, H-D has offered and sold, itself and through its dealers and licensees, riding gear and apparel bearing the Bar & Shield Logo, including shirts, hats, and jackets. Representative examples of H-D's apparel products bearing the Bar & Shield Logo, including shirts, hats, and jackets, are shown below.



  

6












20.     Numerous authorized licensees of H-D in the U.S. sell and have sold for decades a wide range of merchandise bearing the Bar & Shield Logo, including many licensees specifically for various apparel products, such as shirts, hats, and jackets.

21.     H-D's Bar & Shield Logo is a premium brand, and H-D has a reputation for providing a wide variety of high-quality merchandise under the brand itself and through its dealers and licensees.  Given the incredible commercial success of H-D's motorcycle business over the years and its status for many years as a famous, iconic, and cult brand, there has long been a strong demand from motorcycle enthusiasts as well as the general public for other products bearing the Bar & Shield Logo, so they can show their affinity for H-D and its products and brands.  To satisfy this demand and to further build awareness of the Bar & Shield Logo, H-D has for decades engaged in an extensive program licensing the Bar & Shield Logo (and other trademarks) to various licensees for use on a wide range of products, including shirts, hats, and jackets.  Consistent with its image as a premium brand,  H-D positions its licensed merchandise as high-quality merchandise at a premium price point.  H-D's licensed products and/or associated labeling and packaging bear one or more of H-D's trademarks.

22.     H-D has standards and guidelines to which all authorized licensed products branded with the Bar & Shield Logo, including shirts, hats, and jackets, must adhere.  These standards and guidelines allow H-D to control the quality and appearance, among other things, of licensed products offered in connection with the Bar & Shield Logo.  Moreover, all licensed merchandise, including apparel, is subject to H-D's prior written approval before it is manufactured, promoted, and sold to the public by H-D's licensees.  To ensure and maintain the premium and high-quality reputation of licensed merchandise sold under the Bar & Shield Logo, H-D requires its licensees, including its licensees for apparel, to comply with its extensive and

stringent quality-control standards, including: (1) licensees must first submit product concepts and artwork for H-D's prior written approval, (2) once the concept and artwork is approved, licensees must submit a pre-production product sample for H-D's prior written approval, and (3) once the pre-production product sample is approved, licensees must submit for H-D's prior written approval a production sample of the actual product that will be sold to the public. Licensees cannot promote or advertise any licensed products without completing all of these steps. As part of this quality-control review process, H-D carefully reviews the licensed products in numerous respects, including the materials used in making the licensed products, the quality of the craftsmanship and construction of the products, the design, style, and appearance of the products, and the overall quality of the products.

23. H-D has achieved significant commercial success in the motorcycle business, which includes the sales and servicing of motorcycles and the sales of motorcycle parts, accessories, and riding gear. H-D and its authorized dealers have sold many billions of dollars of such products and services over the years. H-D's licensed products business has also been wildly successful, with H-D's royalty revenues from licensing exceeding $400 million during 2005-2016 alone, which translates into billions of dollars of sales at retail. The majority of H-D's licensing royalty revenues are from its apparel licensees, which include shirts, hats, and jackets. H-D currently has approximately ten apparel licensees and has had a similar number of apparel licensees or more for many years.

24. H-D's Bar & Shield Logo has been extensively promoted nationwide across H-D's many product lines. H-D markets and sells motorcycles, motorcycle parts and accessories, and apparel, including shirts, hats, and jackets, under the Bar & Shield Logo through a network of more than 690 authorized dealers located throughout the country, and through numerous other

9

authorized Harley-Davidson retail outlets, including high-profile and highly-trafficked outlets (e.g., stores located at popular airports).

25.     H-D's apparel products, including shirts, hats, and jackets, are also sold online through its HARLEY-DAVIDSON.COM website, authorized dealers' websites, and websites of H-D's authorized licensees.

26.     H-D and its authorized dealers and licensees have sold many billions of dollars of products and services under the Bar & Shield Logo over the years, and have expended many millions of dollars advertising and promoting those marks through virtually every media.  For example, H-D has promoted its products and services under this mark through dealer promotions, catalogs, customer events, industry events, motorcycle-enthusiast events, direct mailings, national television, print, and radio advertisements, and the Internet.

27.     H-D, its products and services, and its Bar & Shield Logo have all received significant unsolicited media coverage for decades, including, for example, in national publications such as *Business Week*, *The Chicago Tribune, The New York Times, The Wall Street Journal, The Washington Post,* and *USA Today,* as well as in books, numerous national television programs and popular online publications and websites, such as MSNBC, CNN Money, CNN.COM, and Yahoo.

28.     As a result of H-D's significant promotional efforts, commercial success, and popularity for decades, the HARLEY-DAVIDSON brand has been ranked annually for the past decade among the top 100 most valuable brands in the world by Interbrand, a leading independent branding firm.  In 2015, Interbrand estimated the value of the HARLEY-DAVIDSON brand at US $5.46 billion.  In 2016, Tenet Partners ranked the HARLEY-

DAVIDSON brand as the 11th Most Powerful Brand in its Top 100 Most Powerful Brands report of 2016.

29.     Based on H-D's longstanding and extensive use of the Bar & Shield Logo, and the widespread advertising, publicity, promotion, and substantial sales of products and services under this mark, the Bar & Shield Logo has been well known and famous to both the general public and the motorcycling public for many years.

30.     In *H-D Michigan LLC v. Broehm*, Opposition No. 91177156, the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("Board") expressly held that the Bar & Shield Logo was famous for motorcycles, apparel, and accessories.  2009 WL 1227921, at *5 (TTAB 2009).  Further, the Board held that the Bar & Shield Logo was a famous mark for such products *regardless of the wording and other matter displayed within the Bar & Shield Logo*.  *Id.*  As a result, the Board held that the third-party mark shown below was confusingly similar to the Bar & Shield Logo despite the differences in wording within the logo and despite the changes to the shape of the shield portion of the mark.



31.     Various federal courts, including this Court, have found the Bar & Shield Logo famous.  *See H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, No. 2:11-CV-00742, 2011 WL 3903278, at *1 (E.D. Wis. Sept. 6, 2011) (finding HARLEY-DAVIDSON and Bar & Shield Logo famous); *Packaging Supplies, Inc. v. H-D, Inc.*, No. 08-CV-400, 2011 WL 1811446, at *2 (N.D. Ill. May 12, 2011) (finding HARLEY-DAVIDSON and Bar & Shield Logo famous); *H-D*

*Michigan, LLC v. Hannon,* No. 09-378-P-S, 2009 WL 3762445, at *1 (D. Me. Oct. 28, 2009)

(finding Bar & Shield Logo famous).

## H-D'S TRADEMARK REGISTRATIONS

32.     In addition to its longstanding and strong common-law rights in its Bar & Shield

Logo, H-D owns, among others, the following federal registrations:

| Mark | Reg. No.<br>Reg. Date | Goods and Services |
|------|------------------------|---------------------|
|  | 3393839<br>03-11-2008 | House mark for a full line of clothing, footwear and headwear |
|  | 1511060<br>11-01-1988 | Clothing, namely, boots, sweat shirts, jeans, hats, caps, scarves, motorcycle riding suits, neck ties, shirts, t-shirts, jackets, vest, ladies tops, bandanas |
|  | 1571032<br>12-12-1989 | Clothing, namely, jeans, t-shirts and jackets |
|  | 3185946<br>12-19-2006 | Jackets, baseball hats, caps, shirts and T-shirts |
|  | 1205380<br>08-17-1982 | Motorcycles;<br><br>Clothing-namely, T-shirts |
|  | 3058720<br>02-14-2006 | Retail store services and distributorships in the fields of motorcycles, motorcycle parts and accessories, footwear, clothing, jewelry, and leather goods; rendering technical assistance in the establishment, operation, and business promotion of retail stores; retail store services in the fields of motorcycles, motorcycle parts and accessories, |

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| | | footwear, clothing, jewelry, and leather goods therefor via a global computer network; dealerships in the fields of motorcycles, motorcycle parts and accessories, footwear, clothing, jewelry, and leather goods |
|  | 1660539 10-15-1991 | Motorcycles and motorcycle parts; namely, air cleaners, drive belts, belt guards, brakes, chains, clutches, crankcases, engine cylinders, fenders and fender supports, footboards, forks, fuel tanks, leg guards, handlebars, cylinder heads, mirrors, oil filters, oil pumps, seats, shock absorbers, backrests, wheels, and windshields; Belts, chaps, denim pants, gloves, hats, caps, jackets, neckties, night shirts, pants, rain suits, shirts, socks, suspenders, sweaters, sweatshirts, tank tops, athletic shoes, shoes, boots, t-shirts, underwear, vests, and wristbands (Among other goods in Classes 8, 9, 11, 14, 16, 18, 20, 21, 24, 26, 27, 28, and 34.) |
|  | 1263936 01-17-1984 | Clothing-Namely, T-Shirts, Jackets, Blue Jeans, Sweat Shirts, Underwear, Bandanas, Headwear, Socks, Boots, Cycle Riding Suits, Belts and Suspenders (Among other goods in Classes 6, 9, 11, 12, 14, 16, 18, 20, 21, 24, 26, and 34.) |
|  | 2344680 25-04-2000 | Bandanas, vests, hats (Among other goods in Classes 14, 16, 21, and 26.) |

33.     The federal trademark registrations listed above are prima facie evidence of H-D's ownership and the validity of those registered trademarks. Further, many of these registrations are incontestable, and thus constitute conclusive evidence of H-D's exclusive right to use those marks for the products and/or services specified in those registrations pursuant to 15 U.S.C. §§ 1065 and 1115(b).

34. H-D also owns the following Wisconsin state trademark registrations for the Bar & Shield Logo:

| Mark | Reg. Date | Goods and Services |
|------|-----------|--------------------|
|  | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |
|  | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |

## AFFLICTION'S WRONGFUL ACTS

35. Affliction uses and has used the Infringing Marks in unauthorized ways that falsely suggest and are likely to create the mistaken impression that Affliction and/or Affliction's products come from H-D or are authorized, approved, and/or licensed by H-D, or are otherwise affiliated with H-D, when they are not.

36. Affliction has displayed, advertised, promoted, distributed, manufactured, offered for sale, and/or sold Infringing Products bearing the Infringing Marks on its website at www.afflictionclothing.com, on third-party websites, and in retail stores. The Infringing Products bearing the Infringing Marks that Affliction has offered and/or continues to offer, that H-D is currently aware of, are shown below.

14












Case 2:17-cv-01776-DEJ   Filed 12/21/17   Page 16 of 32   Document 1









Case 2:17-cv-01776-DEJ   Filed 12/21/17   Page 18 of 32   Document 1







Case 2:17-cv-01776-DEJ   Filed 12/21/17   Page 19 of 32   Document 1



Case 2:17-cv-01776-DEJ   Filed 12/21/17   Page 20 of 32   Document 1







37.     Affliction also promotes Infringing Marks from its creative studio, known as the "Artist Den," as being available for possible use on various apparel products for sale. The Infringing Marks Affliction has promoted from its "Artist Den," that H-D is aware of, are shown below.

 

38.     Shown below is a t-shirt bearing one of the Infringing Marks Affliction promotes from its "Artist Den" that is available for sale on eBay.



39.    Affliction continues to advertise, promote, offer, manufacture, and sell Infringing Products despite knowledge of H-D's trademark rights and H-D's objections.  In or around October 2017, an authorized H-D dealer received a wholesale shipment of one of Affliction's Infringing Products, as shown below:



The dealer alerted Affliction that the product infringed H-D's trademark rights, and Affliction instructed the dealer to return the Infringing Products to Affliction.

40.    On October 18, 2017, H-D's outside counsel sent a cease-and-desist letter to Affliction by email and FedEx objecting to Affliction's unauthorized and infringing promotion, manufacture, distribution, and sale of twenty Infringing Products, and promotion of two Infringing Marks from Affliction's "Artist Den."

41.    On November 13, 2017, Affliction, through its outside counsel, finally responded substantively to the cease-and-desist letter, indicating that Affliction would remove and cease further sales of only six of the Infringing Products identified in the letter.  Affliction removed some Infringing Products, but continues to promote and sell other Infringing Products.

42.    Affliction's continued marketing, advertisement, promotion, and sale of Infringing Products bearing Infringing Marks, and promotion of Infringing Marks for possible

use on products demonstrate that Affliction willfully intended to trade upon the goodwill of H-D and H-D's Bar & Shield Logo and/or recklessly disregarded H-D's rights.

43.     Affliction's actions described above are and have been intended to mislead consumers into believing that Affliction and/or its products are authorized by H-D, connected to H-D, and/or licensed, affiliated with, and/or sponsored by H-D, when in fact they are not.

## INJURY TO H-D AND THE PUBLIC

44.     Affliction's actions described above have damaged and irreparably injured and, if permitted to continue, will further damage and injure H-D, H-D's Bar & Shield Logo, H-D's reputation and goodwill associated with this mark, H-D's reputation for high-quality products and services, and the public interest in consumers being free from confusion.

45.     Affliction's actions as described above have caused and are likely to continue to cause confusion, mistake, and deception as to the source or origin of the Infringing Products and have falsely suggested and are likely to continue to falsely suggest a sponsorship, connection, license, affiliation, or association between Affliction and/or its Infringing Marks and Infringing Products with H-D, H-D's Bar & Shield Logo, and/or H-D's products and services.

46.     Affliction's actions described above are likely to dilute the distinctiveness of H-D's famous Bar & Shield Logo, and are also likely to tarnish this famous mark, thereby injuring H-D.

47.     H-D has no adequate remedy at law.

48.     Affliction knew or should have known that its activities described above constituted trademark counterfeiting, trademark infringement, trademark dilution, and unfair competition, and thus Affliction acted knowingly and willfully in reckless disregard of H-D's Bar & Shield Logo, and in bad faith.

# FIRST CLAIM FOR RELIEF
## Trademark Counterfeiting Under Section 32(1)
## of the Lanham Act, 15 U.S.C. § 1114(1)

49.     H-D repeats and realleges each and every allegation set forth above.

50.     H-D owns a number of federal trademark registrations for the Bar & Shield Logo for various goods and services, including shirts, hats, and jackets.

51.     Without H-D's consent, Affliction intentionally used in commerce the Infringing Marks, which are substantially indistinguishable variations or counterfeits of H-D's Bar & Shield Logo, as defined under 15 U.S.C. § 1116(d)(1)(B)(i), in connection with the sale, offering for sale, and/or distribution of the Infringing Products.

52.     Without H-D's consent, Affliction reproduced, counterfeited, and/or colorably imitated the Bar & Shield Logo and applied such reproductions, counterfeits, and/or colorable imitations (i.e., the Infringing Marks) to labels, signs, prints, packages, wrappers, receptacles or advertisements, as defined under 15 U.S.C. § 1116(d)(1)(B)(ii), intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of the Infringing Products in a manner likely to cause confusion, or to cause mistake, or to deceive.

53.     Affliction's actions described above are likely to cause confusion, mistake, or to deceive as to the origin, sponsorship, or approval of the Infringing Products, Affliction's services, and Affliction's commercial activities, and thus constitute counterfeiting of H-D's federally registered Bar & Shield Logo in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     The actions of Affliction described above have at all times relevant to this action been willful and/or knowing.

55.     As a direct and proximate result of the actions of Affliction as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

56. H-D has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### Trademark Infringement Under Section 32(1)
### of the Lanham Act, 15 U.S.C. § 1114(1)

57. H-D repeats and realleges each and every allegation set forth above.

58. Affliction used and continues to use in commerce reproductions and colorable imitations of the Bar & Shield Logo in connection with the offering, sale, distribution, and advertising of the Infringing Products, which are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Products, Affliction's services, and Affliction's commercial activities, and thus constitute infringement of the Bar & Shield Logo referred to above in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59. The actions of Affliction described above have at all times relevant to this action been willful and/or knowing.

60. As a direct and proximate result of the actions of Affliction as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

61. H-D has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### Trademark Infringement, False Designation
### of Origin, and Unfair Competition
### Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

62. H-D repeats and realleges each and every allegation set forth above.

63. Affliction's actions described above are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Products and Affliction's commercial activities, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to the Bar & Shield Logo in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

26

64.     The actions of Affliction described above have at all times relevant to this action been willful.

65.     As a direct and proximate result of the actions of Affliction as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

66.     H-D has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**Trademark Dilution Under Section**
**43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

67.     H-D repeats and realleges each and every allegation set forth above.

68.     H-D has engaged in extensive nationwide advertising, promotion, and use of the Bar & Shield Logo for many years.  Further, H-D has had massive sales of goods and services bearing the Bar & Shield Logo for decades.

69.     The Bar & Shield Logo has for many years received extensive unsolicited media attention nationwide.  Such extensive and frequent media attention and commercial success has had a substantial impact on the public and has long created an association in the minds of consumers between H-D and the Bar & Shield Logo, such that the Bar & Shield Logo is famous and was famous nationwide before Affliction commenced its unauthorized use of the Infringing Marks.

70.     Affliction's actions described above, all occurring after the Bar & Shield Logo became famous, are likely to cause dilution by blurring and dilution by tarnishment of the distinctive quality of the Bar & Shield Logo in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

71.     The actions of Affliction described above have at all times relevant to this action been willful.

72.     As a direct and proximate result of the actions of Affliction as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

73.     H-D has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**Trademark Infringement**
**Under Wis. Stat. § 132 et. seq.**

74.     H-D repeats and realleges each and every allegation set forth above.

75.     Affliction's actions making use of the Infringing Marks with intent to deceive as to the affiliation, connection, or association of Affliction with H-D in the conduct of its business without the authorization of H-D as set forth above constitutes statutory trademark infringement of the Wisconsin registered Bar & Shield Logo identified above in violation of Chapter 132 of the Wisconsin Statutes.

76.     The actions of Affliction described above have at all times relevant to this action been willful.

77.     As a direct and proximate result of the actions of Affliction as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

78.     H-D has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**
**Common Law Trademark Infringement, Unfair**
**Competition, and Misappropriation**

79.     H-D repeats and realleges each and every allegation set forth above.

80.     Affliction's actions described above with respect to H-D's Bar & Shield Logo and the Infringing Marks constitute common law trademark infringement, unfair competition, and misappropriation of H-D's goodwill under the common law.

81.     The actions of Affliction described above have at all times relevant to this action been willful.

28

82.     As a direct and proximate result of the actions of Affliction as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

83.     H-D has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, H-D prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.      An injunction preliminarily and permanently enjoining Affliction and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, retailers, wholesalers, manufacturers, vendors including online vendors such as ISPs and offline vendors such as shipping companies, successors, assigns, and all persons in active concert or participation with any of them:

1.      From using, displaying, and/or registering the Bar & Shield Logo and the Infringing Marks, in any form, including but not limited to in connection with any other wording or designs, and from using any other marks, logos, designs, designations, or indicators that are confusingly similar to the Bar & Shield Logo, or are likely to dilute the distinctiveness of or tarnish the Bar & Shield Logo, in any unauthorized manner including, but not limited to, use on or in connection with any products in any online or offline context, including without limitation the Infringing Products, Affliction's website and any other online venue for the Infringing Products, any other websites or online platforms including social media and apps, promotional and advertising materials, store names, signage, and product packaging and labeling; and as or as part of any trademarks, business names, domain names, e-mail addresses, URLs, metatags,

screen names, social media names, keywords such as advertising keywords, or any other identifiers;

2. From representing by any means whatsoever, directly or indirectly, that Affliction or any products or services offered by Affliction, including without limitation the Infringing Products, or any activities undertaken by Affliction, emanate from H-D, or are authorized, licensed, or otherwise affiliated with or sponsored or endorsed by H-D;

3. From assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs A.1-2 above.

B. An Order directing Affliction to destroy all products and items in its possession or under its control that bear the Infringing Marks and/or any other marks, logos, designs, designations, or indicators that are confusingly similar to the Bar & Shield Logo, including without limitation any Infringing Products, and to confirm such destruction in writing to H-D, and to provide to H-D the identity and complete contact information for all persons and entities from which Affliction obtained the Infringing Products including, but not limited to, manufacturers, wholesalers, distributors, retailers and all others that assisted or enabled Affliction to make, advertise, promote, sell, distribute, and transport the Infringing Products.

C. An Order requiring Affliction to pay H-D the cost for corrective advertising and/or to engage in corrective advertising in a manner directed by the Court.

D. An Order directing Affliction to file with this Court and serve on H-D's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting

forth in detail the manner and form in which it has complied with the injunction and other orders issued by the Court.

      E.      An Order requiring Affliction to pay statutory damages in accordance with 15 U.S.C. § 1117(c) of $2,000,000 per mark per type of counterfeit product or service sold, offered for sale, or distributed by Affliction bearing marks deemed to be counterfeits of the Bar & Shield Logo;

      F.      An Order requiring Affliction to account for and pay to H-D any and all profits arising from the foregoing acts of counterfeiting, infringement, dilution, false designation of origin, and unfair competition, and an increasing of such profits for payment to H-D in accordance with 15 U.S.C. § 1117, and other applicable statutes and laws;

      G.      An Order requiring Affliction to pay H-D compensatory damages in an amount as yet undetermined caused by the foregoing acts of counterfeiting, infringement, dilution, false designation of origin, unfair competition, and trebling such compensatory damages for payment to H-D in accordance with 15 U.S.C. § 1117, and other applicable statutes and laws;

      H.      An Order requiring Affliction to pay H-D punitive damages in an amount as yet undetermined caused by the foregoing acts of Defendant;

      I.      An Order requiring Affliction to pay H-D's costs and attorney's fees in this action pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, and other applicable statutes and laws; and

      J.      Other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, H-D respectfully demands a trial by jury for all claims so triable.

Respectfully submitted,

Dated this 21st day of December, 2017     **MICHAEL BEST & FRIEDRICH LLP**


By:     *s/Katherine W. Schill*
        Katherine W. Schill, SBN 1025887
        100 East Wisconsin Avenue
        Suite 3300
        Milwaukee, WI 53202-4108
        kwschill@michaelbest.com
        Phone:  (414) 223-2527
        Fax:  (414) 277-0656

        **KELLY IP, LLP**
        David M. Kelly
        Danielle E. Johnson
        1919 M Street NW, Suite 610
        Washington, D.C. 20036
        david.kelly@kelly-ip.com
        danielle.johnson@kelly-ip.com
        Phone:  (202) 808-3570
        Fax:  (202) 354-5232

        **Attorneys for Plaintiffs**
        **H-D U.S.A., LLC and**
        **Harley-Davidson Motor Company Group, LLC**