**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | |
|---|---|
| **H-D U.S.A., LLC and HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,** | Case No. 2:17-cv-01776-PP |
| Plaintiffs, | **JURY TRIAL REQUESTED** |
| vs. | |
| **AFFLICTION HOLDINGS, LLC,** | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT**

Plaintiffs H-D U.S.A., LLC and Harley-Davidson Motor Company Group, LLC (collectively, "H-D") submit this Memorandum in opposition to Defendant Affliction Holdings' ("Affliction") Motion to Dismiss H-D's Complaint ("Affliction's Motion"). (Dkt. 13-14.)

## I.     INTRODUCTION

H-D sued Affliction for selling shirts, hats, and jackets that copy or imitate several of H-D's world-renowned trademarks ("Infringing Products"). Affliction now moves to dismiss this case, claiming that it is not amenable to personal jurisdiction in Wisconsin despite admitting that it has employed a Wisconsin-based sales representative and operates its own fully interactive e-commerce website through which it has sold the Infringing Products to Wisconsin residents. Affliction's admissions not only satisfy the "minimum contacts" test for personal jurisdiction, but also show that Affliction has purposefully targeted sales of Infringing Products to Wisconsin businesses and consumers. In short, even at this preliminary stage, before H-D has taken any

discovery, Affliction's admissions support specific personal jurisdiction[1] and venue in this District, and Affliction's motion should be denied. Alternatively, to the extent any ambiguity remains, the Court should order limited discovery on the issue of personal jurisdiction.

## II. FACTS

H-D is a world-famous manufacturer of motorcycles and a wide variety of other products and services, including shirts, hats, and jackets. (Dkt. 1 ¶ 13.) H-D is based in Wisconsin. (*Id.* ¶¶ 7-8.) Since at least 1915, H-D has used its famous and federally registered Bar & Shield Logo[2] shown below in connection with apparel, including shirts, hats, and jackets. (*Id.* ¶ 17.)



Affliction is a California-based company that designs and sells apparel and accessories in the U.S. and around the world. (Declaration of Alan Schnapper ("Schnapper Decl."), Dkt. 15-1

---

[1] Although Affliction's Motion addresses both general jurisdiction and specific jurisdiction, H-D asserts only specific jurisdiction at this time.
[2] For purposes of this Opposition, the term "Bar & Shield Logo" has the same meaning as in H-D's Complaint. (Dkt. 1 ¶ 1.)

¶¶ 3-6.) Affliction sells its products to retailers, through its e-commerce websites, through its own retail stores, and to international distributors. (*Id.* ¶ 7.)

Affliction receives and ships e-commerce orders to territories across the U.S., including Wisconsin. (Schnapper Decl. ¶¶ 7, 16, 19.) Affliction's major retail accounts are serviced from its California headquarters, while specialty retailers are serviced by sales representatives in territories across the country. (*Id.* ¶ 8.) An independent sales representative based in Wisconsin services specialty retail stores in Wisconsin (and several other states) on Affliction's behalf. (*Id.* ¶¶ 9-10.) The Wisconsin sales representative is the exclusive Affliction representative for Wisconsin. (*Id.* ¶ 9.) The Wisconsin sales representative solicits sales, builds sales relationships, and receives orders for Affliction's products for his territories, including Wisconsin, and forwards the orders to Affliction to review, accept, reject, and/or fulfill. (*Id.* ¶¶ 9, 11.)

Affliction has displayed, advertised, promoted, distributed, manufactured, offered for sale, and/or sold Infringing Products bearing variations of H-D's Bar & Shield Logo (the "Infringing Marks") on its e-commerce website at www.afflictionclothing.com, on third-party websites, and in retail stores. (Dkt. 1 ¶ 36.) Depicted below is H-D's Bar & Shield Logo surrounded by representative examples of the Infringing Marks. (Dkt. 1 ¶ 2.)



  



Affliction's e-commerce website displays the Infringing Products, and allows consumers to buy those products by clicking on an "Add to Cart" tab and then clicking on a tab labeled "Secure Checkout," after which the customer is asked to type in name, street address, and email information. (Declaration of Danielle Johnson ("Johnson Decl.") ¶¶ 3-6.) The website then provides a drop-down menu that lists all 50 states, including Wisconsin. (*Id.*)

Affliction admits that it has shipped Infringing Products into Wisconsin, including to Wisconsin retail stores. (Schnapper Decl. ¶¶ 15-16, 18-19.) In particular, Affliction admits to having sold Infringing Products in Wisconsin since 2014 either through its e-commerce site, or to retailers serviced by its Wisconsin sales representative. (*Id.* ¶¶ 16, 18-19.) The majority of

these sales occurred in 2017 and were made through Affliction's sales representative to specialty retailers in Wisconsin.[3] (*Id.* ¶ 19.)

## III. ARGUMENT

### A. Legal Standard

A plaintiff bears the burden of showing the existence of personal jurisdiction, but need only make a *prima facie* showing absent an evidentiary hearing. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In deciding whether a plaintiff has met this *prima facie* standard, courts resolve any disputes concerning relevant facts in the plaintiff's favor. *Id.*; *Casual Panache, Inc. v. Burmax Co., Inc.*, No. 15-CV-234-WMC, 2016 WL 1259436, at *2 (W.D. Wis. Mar. 30, 2016).

Federal courts may exercise personal jurisdiction over a nonresident defendant when the defendant "would be amenable to suit under the laws of the state in which the federal court sits." *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). Wisconsin's long-arm statute has been construed to confer personal jurisdiction to the fullest extent allowed under due process. *Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012). The "key question" is thus whether the defendant has sufficient "minimum contacts" with the forum state such that "the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 700–01 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Felland*, 682 F.3d at 673. When a plaintiff's claims are for intentional torts, the court's inquiry "focuses on whether the conduct underlying the claim was purposely directed at the forum state." *Felland*, 682 F.3d at 674 (quoting *Tamburo*, 601 F.3d at 702). This inquiry looks at whether the defendant engaged in "(1) intentional conduct (or

---

[3] Because discovery has not begun, H-D does not know whether these are Affliction's only infringing sales in Wisconsin. However, as shown below, these admitted sales, without more, establish personal jurisdiction.

5

'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703.

Courts consider venue to properly lie in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). For the purposes of Section 1391(b), a corporate defendant resides in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

> **B. Exercising Personal Jurisdiction over Affliction Is Proper Based on Affliction's Sales Directly to Wisconsin Retailers via a Wisconsin Sales Representative and to Wisconsin Residents via the Internet**
>
> > **1. Affliction's Sales Through Its Wisconsin Sales Representative Support Specific Jurisdiction**

This Court has specific personal jurisdiction over Affliction because Affliction has directly sold Infringing Products in Wisconsin and H-D's claims arise out of those infringing sales. Affliction admits that it uses a Wisconsin sales representative to service specialty retail stores in Wisconsin. (Schnapper Decl. ¶ 9.) This alone supports specific jurisdiction. *See Ledalite Architectural Prods. v. Pinnacle Architectural Lighting, Inc.*, No. 08-CV-558-SLC, 2009 WL 54239, at *2 (W.D. Wis. Jan. 7, 2009). In *Ledalite*, the district court found sufficient minimum contacts based on the actions of an independent sales agent. *Id.* The court stated that "[t]he presence of a local company holding itself as a local 'representative' of defendant's

recessed lighting fixtures and defendant's failure to deny that the company plays the likely role of salesperson has persuaded me that plaintiff has made the required prima facie showing that defendant has sufficient contacts within the state to allow the court to exercise personal jurisdiction over it in this case." *Id.* The court ruled that the plaintiff had made a *prima facie* showing that grounds existed for exercising personal jurisdiction despite having no evidence of sales or offers to sell.

Here, Affliction and its Wisconsin sales representative work hand-in-hand, with the sales representative soliciting orders from Wisconsin retailers and forwarding them to Affliction for review, acceptance, rejection, and fulfillment. (Dkt. 14-1, p. 11.) Plainly, those contacts *prima facie* support the exercise of personal jurisdiction over Affliction in Wisconsin. *See Grand River Enters. Six Nations Ltd. v. VMR Prods. LLC*, No. 13-CV-104-WMC, 2013 WL 6185205, at *4 (W.D. Wis. Nov. 26, 2013) ("Grand River has also proffered sufficient evidence of VMR's minimum contacts through sales in multiple, physical locations in Wisconsin and its sales representatives' targeting of potential Wisconsin customers by directing them to those locations.").

### 2. Using a Sales Representative Does Not Insulate Affliction

Affliction argues, however, that "[t]he acts of a third party such as the independent contractor here are not acts of Affliction for purposes of the specific jurisdiction inquiry." (Dkt. 14-1, p. 12 (citing *Philos Techs., Inc. v. Philos & D., Inc.,* 802 F.3d 905, 913 (7th Cir. 2015)).) *Philos*, however, is inapposite. First, the case did not involve an intentional tort. Rather, the case involved "a complicated transaction—or set of transactions—among several related companies, most of which are based in the Republic of Korea." 802 F.3d at 907. Second, the Court merely held that visits to Illinois by various Korean business persons that were not related to the contract

at issue did not support specific jurisdiction. *Id.* at 913-916. *Philos* does not suggest, much less hold, that a trademark counterfeiter/infringer can avoid specific jurisdiction by using a sales representative to solicit orders.

On the contrary, "[j]ust as a parent corporation cannot insulate itself from a state's jurisdiction merely by separately incorporating its sales force or other operations for that state, a corporation cannot avoid jurisdiction merely by hiring independent contractors to conduct its business wherever it would prefer not to defend suit." *Richard Knorr Int'l, Ltd. v. Geostar, Inc.*, No. 08 C 5414, 2010 WL 1325641, at *11 (N.D. Ill. Mar. 30, 2010) (citation omitted). Indeed, as the court in *Ledalite* said, "even if defendant's only ties with Wisconsin are its dealings with [the sales representative] regarding those sales, those contacts are sufficient to establish specific jurisdiction because they are activities directed at Wisconsin that are related to plaintiff's allegations that defendant induced or contributed to others' infringement." 2009 WL 54239, at *2. Likewise, Affliction's ties to Wisconsin through its sales representative are sufficient to establish specific jurisdiction in this case.

### 3. H-D's Residence in Wisconsin Is Not the Only Link to This Forum

Affliction relies on the Supreme Court's ruling in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), but *Walden* is inapposite. In *Walden*, the plaintiff was the *only* link between the forum and the defendant. *Id.* at 1124. The defendant had not "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" the forum state. *Id.* Here, by contrast, Affliction has linked itself to Wisconsin by sending its Wisconsin-based sales representative and its Infringing Products to Wisconsin. Again, these contacts establish that Affliction targets consumers in this District. *See Grand River,* 2013 WL 6185205, at *4.

#### 4. Affliction's Internet Sales Also Establish Specific Jurisdiction

In addition to Affliction's sales through its Wisconsin sales representative, Affliction offered and sold Infringing Products to Wisconsin consumers via its own fully interactive website, and thereby established minimum contacts sufficient to support the exercise of specific jurisdiction. *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015).

In *Monster Energy*, Monster Energy sued Chinese defendants who operated commercial, fully interactive Internet stores through a global marketplace named AliExpress. 136 F. Supp. 3d at 901. Through these Internet stores, the defendants offered to sell counterfeit Monster Energy products by displaying photographs of the counterfeit products. *Id.* Defendants chose shipping templates that allowed shipments to the United States and to Illinois. *Id.* at 901-02. At least three individuals with Illinois shipping addresses attempted to purchase counterfeit Monster Energy products from defendants. *Id.* at 904. Despite no evidence that a sale to Illinois occurred, the Court found personal jurisdiction proper because "an offer to sell infringing or counterfeit items establishes liability for trademark infringement, a tortious act." *Id.* at 906. As a result of all of these actions, "defendants expressly elected to do business with the residents of all fifty states, including Illinois." *Id*.

Similarly, in *Hemi,* the state of Illinois sued Hemi, an online retailer of discount cigarettes, for illegally selling to Illinois residents. Through its websites, Hemi sold cigarettes to residents of every state except New York. It did not "specifically single out Illinois on any of its websites." 622 F.3d at 756. Nevertheless, the Seventh Circuit held that Hemi's contact with Illinois—its internet sales—"were sufficient to satisfy due process." *Id.* at 757. In particular, the Court found that despite Hemi not mentioning Illinois by name on its websites, "Hemi stood

ready and willing to do business with Illinois residents. . . . [and] in fact, knowingly did do business with Illinois residents." *Id.* at 758 (citation omitted).

The District Court in *Hemi* also rejected the argument—echoed by Affliction here—that Internet sales cannot create the required "minimum contacts" because they supposedly are "unilateral actions by [ ] customers." *Id.* As the Court in *Hemi* explained, that argument ignores the e-commerce retailer's own actions, including creating the e-commerce website, holding itself out as open to do business in the forum state and other states, and shipping the products to customers in the forum state. *Id.* "It [was] Hemi reaching out to residents of Illinois and not the residents reaching back, that create[d] the sufficient minimum contacts with Illinois that justif[ied] exercising personal jurisdiction over Hemi in Illinois." *Id.*; *see also uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 428 (7th Cir. 2010) ("No more persuasive is GoDaddy's argument that its sales to Illinois residents are automated transactions unilaterally initiated by those residents. . . . But of course the customers who buy domain names from GoDaddy are not simply typing their credit card numbers into a web form and hoping they get something in return.").

The facts in the present case are analogous to those in *Monster Energy* and *Hemi*. Affliction operates a fully interactive commercial website through which it offers to sell—and, importantly, has sold—the Infringing Products. The "secure checkout" page on Affliction's website asks customers to provide their "shipping information," and features a "drop down menu" that lists all 50 states, including Wisconsin. This "drop down menu" feature, standing alone, shows that Affliction expects to receive orders from Wisconsin, and thus targets Wisconsin residents. *See Monster Energy,* 136 F. Supp. 3d at 907. Here, as in *Monster Energy* and *Hemi*, Affliction not only is ready and willing to do business with Wisconsin residents, but it

does so by creating its website, welcoming orders from Wisconsin residents and others, and knowingly shipping Infringing Products to Wisconsin residents.[4]

### 5. Affliction Has Made Sufficient Infringing Sales in Wisconsin to Support Specific Jurisdiction

Affliction argues that it has sold too few of the Infringing Products in Wisconsin to support personal jurisdiction. (Dkt. 14-1, pp. 10-11.) In determining personal jurisdiction, however, "the actual number of sales to the forum state is not determinative." *Best Chairs Inc. v. Factory Direct Wholesale, LLC*, 121 F. Supp. 3d 828, 837 (S.D. Ind. 2015). "Though there may be a situation in which a greater quantity of contacts may be required (for example, if general personal jurisdiction were asserted), the quality of the specific contacts here—repeated commercial sales, including into locations in this state in which the defendant's products compete, or at least potentially compete, with plaintiff's products—is determinative." *Grand River*, 2013 WL 6185205, at *3; *see also Valtech, LLC v. 18th Ave. Toys Ltd.*, No. 14 C 134, 2015 WL 603854, at *4 (N.D. Ill. Feb. 12, 2015) ("Although Defendants' sales in Illinois are very minimal in comparison to overall sales, these sales to Illinois residents still occurred, each resulting in an alleged intentional tort."). Indeed, as noted above, a completed sale is not even necessary to establish personal jurisdiction. Merely offering to sell infringing or counterfeit products establishes liability for trademark infringement and also supports specific personal jurisdiction. *See Monster Energy*, 136 F. Supp. 3d at 906.

---

[4] The Seventh Circuit does not apply the "sliding scale" minimum contacts analysis that assesses a website's degree of interactivity for the purposes of establishing personal jurisdiction. *See Tamburo v. Dworkin*, 601 F.3d 693, 703 n.7 (7th Cir. 2010); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010). Were the sliding scale analysis to apply, H-D would satisfy those requirements, as Affliction runs a fully interactive website through which it does business over the Internet, including by offering the Infringing Products for sale.

Thus, regardless of whether Affliction has sold more of the Infringing Products in other states,[5] the minimum contacts test for specific jurisdiction is satisfied by Affliction's direct, targeted sales of Infringing Products in Wisconsin.

### 6. Affliction's Reliance on *Advanced Tactical Ordnance* Is Misplaced

Affliction cites no trademark case where personal jurisdiction and venue were found not to exist where the defendant sold counterfeit or infringing products in the district using sales representatives in the district, a fully interactive e-commerce website, or both. Instead, Affliction relies on inapposite cases, including *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), where, unlike here, the defendant's sales were unrelated to the plaintiff's claims. Specifically, the defendant posted an allegedly infringing message about its products on the main page of its website and in emails. *Id.* at 799. The defendant then fulfilled several orders for those products. *Id.* at 801. Nothing, however, linked those sales to the offending website message or email. *Id.* Here, the connection between Affliction's infringing conduct and its sales of Infringing Products is undeniable—the Infringing Marks appear on the purchase page of Affliction's website and on the Infringing Products themselves, directly connecting online infringing purchases to the litigation and to the harm suffered by H-D.[6] Thus, personal jurisdiction is proper in Wisconsin, and Affliction's Motion should be denied.

---

[5] In addition to the Infringing Products, Affliction's product lines contain scores of other items that do not do not violate H-D's marks. It is not relevant to compare Affliction's sales volume of Infringing Products to its other products for purposes of specific jurisdiction. *Cf. Allianz Glob. Corp. & Specialty Marine Ins. Co. v. Watts Regulator Co.*, 92 F. Supp. 3d 910, 919 n.5 (S.D. Iowa 2015) (noting that an analysis of the percentage of nationwide sales was not applicable to a specific personal jurisdiction analysis).
[6] The injury in trademark infringement cases is felt where the trademark owner resides, and, although not dispositive for establishing personal jurisdiction, is relevant. *See, e.g.*, *Valtech, LLC v. 18th Ave. Toys Ltd.*, No. 14 C 134, 2015 WL 603854, at *4 (N.D. Ill. Feb. 12, 2015) ("The allegations show that Defendants' tortious conduct was done for the purpose of causing Valtech injury in Illinois—competing for potential sales in Illinois with products that infringe on Magna–Tiles' trade dress. With this

### 7. Exercising Jurisdiction over Affliction in Wisconsin Is Fair

Finally, personal jurisdiction over Affliction is proper because it "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. This inquiry focuses on "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotation marks omitted).

Because Affliction has targeted Wisconsin, Affliction must make a compelling case that exercising jurisdiction over it in Wisconsin would be unreasonable, *see id.*, but Affliction has made no such claims here. Indeed, as Affliction notes, its reach is global. Therefore, any burden of defending a lawsuit in Wisconsin would be minimal. *See uBID*, 623 F.3d at 432 ("The burden of defending a lawsuit in Illinois is minimal for GoDaddy, a corporation with a broad enough reach to operate and market its services on a national scale."). The other fairness factors also weigh in favor of finding personal jurisdiction in this District, including Wisconsin's interest in adjudicating a dispute over rights held by a Wisconsin corporation and H-D's interest in obtaining convenient and effective relief in Wisconsin. *See Casual Panache*, 2016 WL 1259436, at *5 (finding personal jurisdiction fair and proper given Wisconsin's interest in enforcing a copyright held by a Wisconsin corporation, plaintiff's location and interest in proceeding in Wisconsin, the likelihood of the court being in the best position to bring this lawsuit to a fair and efficient resolution, and Wisconsin's interest in advancing the essential nature of copyright).

---

reasoning, Valtech has satisfied its burden of making a *prima facie* case that Defendants have adequate minimum contacts with Illinois such that exercising specific personal jurisdiction is necessary.").

Affliction received the benefit—revenues—from selling the Infringing Products in Wisconsin. It is therefore fair that it "submit[] itself to claims related to those products, including claims alleging the products infringed on a competitor's trademark." *Grand River*, 2013 WL 6185205, at *5.

**C.  Venue Is Proper in This District Because Defendant Is Subject to Personal Jurisdiction in This District**

As shown above, an exercise of personal jurisdiction over Affliction is proper in this District, and thus venue is likewise proper. *See Harley-Davidson, Inc. v. Columbia Tristar Home Video, Inc.*, 851 F. Supp. 1265, 1269 (E.D. Wis. 1994) ("Whereas we thus have personal jurisdiction over the defendants, they are deemed to reside, and venue properly lies, in the Eastern District of Wisconsin.").

**D.  In the Alternative, Discovery on the Issue of Personal Jurisdiction Should Be Permitted**

Affliction's admissions concerning its sales of Infringing Products in Wisconsin via its Wisconsin-based sales representative, through Wisconsin retailers, and via the Internet establish that the exercise of specific personal jurisdiction over Affliction is proper. If, however, the Court were to find any ambiguity or uncertainty about the quality or quantity of Affliction's Wisconsin contacts, H-D respectfully requests that it be afforded a limited period (sixty days) to conduct jurisdictional discovery so that it can probe the full scope and extent of Affliction's activities in promoting, distributing, and selling the Infringing Products in Wisconsin. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (courts should permit jurisdictional discovery if the plaintiff has made "a colorable or prima facie showing of personal jurisdiction"); *Precision Dynamics Corp. v. Typenex Med., L.L.C.*, No. 13-CV-860, 2014 WL 12656904, at *2 (E.D. Wis. Feb. 13, 2014) (jurisdictional discovery is appropriate when the record is unclear or ambiguous, and this standard is low).

Given that the Court must resolve any disputed facts in the non-movant's favor, and that, in particular, H-D has not had the opportunity to cross-examine Affliction's declarant, it would not be appropriate to grant Affliction's Motion without first giving H-D an opportunity to conduct discovery on the issue of personal jurisdiction.

**IV. CONCLUSION**

Based on the sales of Infringing Products in Wisconsin that Affliction has admitted and the authorities set forth above, H-D respectfully requests that the Court deny Affliction's Motion to Dismiss. If, however, any uncertainty or ambiguity remains concerning the nature and extent of Affliction's contacts with Wisconsin, H-D requests, in the alternative, that this Court grant H-D the opportunity to undertake limited jurisdictional discovery.

Dated this 21st day of March, 2018      **MICHAEL BEST & FRIEDRICH LLP**

By: *s/Katherine W. Schill*
Katherine W. Schill, SBN 1025887
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
kwschill@michaelbest.com
Phone: (414) 223-2527
Fax: (414) 277-0656

**KELLY IP, LLP**
David M. Kelly
Danielle E. Johnson
1919 M Street NW, Suite 610
Washington, D.C. 20036
david.kelly@kelly-ip.com
danielle.johnson@kelly-ip.com
Phone: (202) 808-3570
Fax: (202) 354-5232
**Attorneys for Plaintiffs
H-D U.S.A., LLC and
Harley-Davidson Motor Company Group, LLC**